UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUSAN LISA HEUN,<br><br>                Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>                Defendant. | Case No. 12-cv-02227 NC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND TO THE SOCIAL SECURITY ADMINISTRATION**<br><br>Re: Dkt. Nos. 12, 15 |

Plaintiff Susan Lisa Heun seeks judicial review of the Commissioner of Social Security's final decision denying Heun's claim for disability insurance benefits as a person disabled and unable to engage in substantial gainful activity. Both parties move for summary judgment; plaintiff moves in the alternative for remand to the agency. The issue is whether substantial evidence supports the ALJ's assessment of Heun's residual functional capacity. The Court finds that substantial evidence does not support the ALJ's finding that Heun has the residual functional capacity to perform medium work, with some accommodation for her vision issues and photophobia, but with no accommodation for the effect of the pain she suffers. Accordingly, the Court REVERSES the ALJ's decision and REMANDS for the Commissioner to determine, after consideration of a residual functional capacity that includes a pain limitation, whether Heun may still perform jobs existing in significant numbers in the national economy.

Case No. 12-cv- 02227 NC
ORDER GRANTING REMAND

# I. BACKGROUND

**A.  Agency Review**

On May 15, 2008, Heun filed an application for disability benefits with an onset date of March 1, 2007. (A.R. 16.) The Social Security Administration ("SSA") denied Heun's request on September 9, 2008. (A.R. 70.) Considering reports from Gary Barth, M.D., Kaiser Santa Rosa, Memorial Hospital Santa Rosa, 4th Street Laser and Surgery, Dan Lightfoot, M.D., and Scott Peterson, M.D., the SSA found Heun's condition not disabling. (A.R. 70.) Specifically, while the SSA found that the medical evidence showed "severe right eye light sensitivity" with "lost/reduced sight," and "near, far, and depth perception" limitations, it determined that Heun's condition did not preclude her from all work activities. (A.R. 70.) Heun requested that her claim be reconsidered on November 8, 2008. (A.R. 74.) The SSA denied her request for reconsideration. (A.R. 76.)

**B.  Administrative Review**

On March 5, 2009, Heun requested review by an Administrative Law Judge ("ALJ"). (A.R. 81-82.) At a hearing before ALJ Kristine Kwon on October 20, 2009, Heun testified about her eye injury, the pain associated with her eye injury, and how the injury and associated pain affected her ability to work. (A.R. 35-53.) Vocational expert Gene Johnson also testified. (A.R. 54-65.)

**1.  Heun's Testimony at the October 20, 2009 Hearing**

Heun is a forty-four-year-old high school graduate, who holds licenses in life and fire and casualty insurance, and previously worked as an insurance agent. (A.R. 33, 56.) Heun suffers from herpes simplex in her right eye, a neurological problem that causes pain. (A.R. 33.) Heun testified that she wears very dark glasses for light sensitivity and must wear these glasses outside, under fluorescent lights, and whenever her pain is severe. (A.R. 35-36.) Overall, she wears the glasses twenty-five percent of the time she is home. (A.R. 35.) She wore the glasses while she testified, because she felt pain. (A.R. 36.) The glasses do not relieve, but only mitigate, the pain she feels. (A.R. 36.)

//

Heun testified extensively about her pain and the effects of her medication. (AR. 36-38, 41-44.) Specifically, Heun testified that she originally sought surgery to correct her vision, but the pain from her condition caused her treating physician, Dr. Barth, to recommend that she focus on remedying the pain. (A.R. 42.) The pain originates from her right eye, envelops the entirety of her right eye socket, and extends from her eyebrow, down her cheek, to her jaw. (A.R. 44.) She testified that the searing pain makes her want to pull her teeth out. (A.R. 45.)

To address the pain, Heun takes an assortment of drugs and painkillers, including doses of morphine three times a day, daily doses of Topamax and tramadol, and weekly doses of Lyrica when the pain becomes too severe. (A.R. 46.) Heun testified that her pain level, even with medication, is around a seven or eight out of ten. (A.R. 46.) She has good days, when she is able to finish household chores and run errands, but, even on those good days, she must pace herself and lay down intermittently. (A.R. 42-44.) She is able to drive, but relies on her husband, mother, and son as well. (A.R. 47-40, 50-51.) She also has bad days, when she does not get up at all. (A.R. 43.) Heun estimates that she has about four to five bad days a week. (A.R. 43.)

Pain relief comes at a price. Heun testified that the medicine makes it "hard to remember things," that she is unable to think, and often becomes drowsy. (A.R. 38, 41.) Heun testified that the pain and effects of the drugs makes it so she cannot work. (A.R. 38, 40.) She testified that her former employer could not keep her on because she was no longer dependable. (A.R. 38.) Even when her full-time job was cut down to two afternoons a week, she felt that the pain and the drugs wore her out. (A.R. 38, 39-40.)

**2. Gene Johnson's Testimony**

Johnson, the vocational expert, testified about his professional qualifications, his familiarity with jobs that exist in the regional and national economy, and his familiarity with the Commissioner's regulations regarding the vocational terms. (A.R. 55.) Johnson considered Heun's age, education, background, her ability to do light work, and her need to work indoors with dark glasses, at a job that does not require visual acuity, with limited

1  computer work.  He testified that Heun was unable to perform her past relevant work.
2  (A.R. 58.)  Further, considering the same factors, Johnson testified that there is no work in
3  the national economy that Heun could perform.  (A.R. 60-61.)  Expanding the parameters
4  to include jobs that called for occasional visual acuity, Johnson testified that there are no
5  jobs in significant numbers in the national or regional economy.  (A.R. 63.)

6  On December 8, 2009, Johnson responded to an interrogatory from ALJ Kwon.
7  (A.R. 213.)  The ALJ, using government vocational programs available, had identified
8  several jobs which required only occasional visual acuity that could be performed while
9  wearing dark glasses, by someone capable of light work, and which do not require work
10  with heights, dangerous machinery, vehicles or depth perception.  (A.R. 215.)  The ALJ
11  asked Johnson whether, in his opinion, these jobs could be performed, given the
12  hypothetical criteria she had proposed.  (A.R. 215.)  In response to the ALJ's interrogatory,
13  Johnson stated that he was mistaken in his testimony at the hearing.  (A.R. 213.)
14  Considering the ALJ's hypothetical limitations, Johnson identified several jobs, including
15  recreation aide, charge account clerk, case aid, housekeeping, usher, and raw shellfish
16  preparer.  (A.R. 213, 217, 219.)

17  **3.    The ALJ's Findings**

18  On December 18, 2009, the ALJ issued her decision.  (A.R. 16-23.)  The ALJ
19  analyzed Heun's claims under the five-step evaluation process for determining disability.
20  (A.R. 16-17); *see* 20 C.F.R. § 404.1520.

21  The ALJ determined that Heun possessed a residual functional capacity to perform
22  medium work, requiring only occasional near and far acuity, while wearing dark glasses,
23  excluding work that required depth perception, involved hazardous machinery, or heights.
24  (A.R. 19.)  In support of this residual functional capacity assessment, the ALJ relied on the
25  opinions of several medical sources, including selections from Drs. Barth, Rubenstein,
26  Peterson, Lightfoot, and Sheehy.  (A.R. 20-21.)  Based on the medical evidence, the ALJ
27  found "that while [Heun] may have symptoms intermittently, . . . she may function with
28  certain modifications of dark glasses, and avoiding work with intensive vision requirement,

work around moving machinery, or heights." (A.R. 21.) She noted that several doctors opined a good and stable prognosis. (A.R. 21.) She also found that Heun was on a number of pain medications to help ameliorate the pain level, but that her doctors had not noted any side effects. (A.R. 21.)

The ALJ also found a more restrictive residual functional capacity was not supported by the evidence. Although Heun's eye ailment could be expected to cause pain, the ALJ found that Heun's allegations regarding the intensity, persistence, and limiting effects of the pain were not credible, given her daily activities and the doctors' opinions. (A.R. 20-21.) The ALJ found that Heun led a relatively active life, with minor restrictions from her right eye impairment. (A.R. 20.) The ALJ cited to her ability to drive three times a week, the one instance when she drove for forty miles, the lack of visual restrictions on her license, her weekly yoga sessions, and her treadmill exercise. (A.R. 20.) The ALJ did not make any direct statements as to the weight she gave each individual doctor, and she did not reject or find unpersuasive any of the selected opinions of the doctors she relied on.[1]

**C.   The Appeals Council's Denial of Review**

Heun appealed the ALJ's decision to the Appeals Council on December 31, 2009, arguing that the ALJ erred as a matter of law, abused her discretion, and that the actions, findings, and conclusions of the ALJ were not supported by substantial evidence. (A.R. 12.) The Appeals Council found no reason to review the ALJ's decision and denied Heun's request for review. (A.R. 5.)

//

---

[1] Although the ALJ did incorrectly designate Dr. Peterson as a treating physician, there is no indication that the ALJ gave Dr. Peterson any more weight than other non-treating physicians. Given that the portions of Dr. Peterson's opinion that the ALJ cited to are consistent with the rest of cited selections, it is unclear what harm this incorrect designation had on Heun's case, especially since Heun, in her motion for summary judgment, uses Dr. Peterson's opinion to support her assertion that the ALJ's residual functional capacity determination is not supported by substantial evidence. Heun's Motion for Summary Judgment, Dkt. No. 12 at 8. Accordingly, the Court does not review this issue and makes no determination regarding the propriety of the ALJ's designation of Dr. Peterson.

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation and quotation marks omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal citation and quotation marks omitted). It is evidence that a reasonable mind would accept as adequate to support the conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal citation and quotation marks omitted). Furthermore, a decision by the ALJ will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679.

When reviewing the ALJ's weighing of medical evidence, additional standards apply. *Id.*; 20 C.F.R. § 404.1527. If a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. § 404.1527(c)(2). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (internal citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician." *Ryan*, 528 F.3d at 1198.

## III. DISCUSSION

Disability claims are evaluated using a five-step sequential analysis. 20 C.F.R. § 404.1520. In step one, the ALJ determines whether a claimant is currently engaged in

Case No. 12-cv-02227 NC
ORDER GRANTING REMAND                    6

substantial gainful activity. *Burch*, 400 F.3d at 679. In step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments. *Id.* In step three, the ALJ considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In step four, the ALJ assesses whether the claimant is capable of performing her past relevant work. *Id.* In step five, the ALJ examines whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy. *Id.*

Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(c). In other words, a claimant's residual functional capacity is what she can still do despite her physical, mental, nonexertional, and other limitations. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (residual functional capacity is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). In determining a claimant's residual functional capacity, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a).

Here, substantial evidence does not support the ALJ's finding of Heun's residual functional capacity for two reasons. First, the ALJ erred in finding Heun's testimony regarding the intensity of the pain associated with her injury not credible. Second, the ALJ improperly evaluated the medical opinions by selectively disregarding medical opinions that suggest disability without providing clear and convincing reasons supported by the record.

**A.  Substantial Evidence Does Not Support the ALJ's Finding that Heun's Testimony Was Not Credible.**

The assessment of an individual's residual functional capacity includes consideration of pain. 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(c). Pain is subjective and generally cannot be measured objectively; yet it can have "severe debilitating effects" to the point of

disabling a person. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1545(e) ("Pain or other symptoms may cause a limitation of function beyond . . . the anatomical, physiological or psychological abnormalities considered alone."). Subjective complaints of pain will not establish disability "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). Once impairment is medically established, however, the ALJ cannot require medical support to prove the severity of the pain. *Johnson*, 60 F.3d at 1433 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)). Neither can the ALJ reject a claimant's subjective complaints solely because of a lack of medical evidence to fully corroborate the alleged severity of pain. *Burch*, 400 F.3d at 680 (citing *Bunnell*, 947 F.2d at 345). The rationale for this approach is that pain testimony may establish greater limitations than can medical evidence alone. *Id.*; *see* SSR 96-7p (1996).

Moreover, the ALJ cannot discount a claim of severe pain without making "specific findings justifying that decision." *Burch*, 400 F.3d at 680 (citing *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989)). Unless there is affirmative evidence showing that the claimant is malingering, an ALJ must give clear and convincing reasons why the claimant's testimony of severe pain is not credible, which must be supported by substantial evidence in the record as a whole. *Id.* The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints; "[g]eneral findings are insufficient." *Id.* at 680-81. In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and inconsistencies in the claimant's testimony. *Id.* at 680. Additionally, the ALJ may consider: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. *Id.*; SSR 88-13 (1996).

//

In *Reddick v. Chater*, the Ninth Circuit reversed an ALJ's determination that the claimant was not credible because the finding was not supported by the record. 157 F.3d 715, 722 (9th Cir. 1998). The ALJ concluded that the claimant's daily activities indicated that she was able to work, and thus found her testimony regarding the severity of her pain and consequential limitations not credible. *Id.* Evaluating Reddick's medical records, disability forms, and testimony, the Ninth Circuit found that Reddick's activities, although sometimes prolonged, were sporadic and punctuated with rest. *Id.*; *see also Lester v. Chater*, 81 F.3d, 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."). Thus, her activities and pain were fully consistent with her disability. *Reddick*, 157 F.3d at 722. The Ninth Circuit instructed that "claimants should not be penalized for attempting to lead normal lives in the face of their limitations," especially since "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* (citing *Fair*, 885 F.2d at 603); *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").

Here, the ALJ found that Heun's eye impairment "could reasonably be expected to cause the alleged" pain, but also found that Heun's testimony regarding the intensity, persistence, and limiting effects of the pain was not credible. (A.R. 19-20.) Specifically, like the ALJ reversed by the Ninth Circuit in *Reddick*, ALJ Kwon found the pain levels Heun described in her testimony inconsistent with her relatively active life. (A.R. 20.) But like the claimant in *Reddick*, Heun's activities are sporadic and punctuated with rest. She testified she must pace herself and rest intermittently, even on good days. (A.R. 42-44.)

In addition, the record indicates that Heun's activity levels correspond to the dosage of her pain medications. When comparing Heun's testimony about the severity of her pain with the evidence of Heun's yoga and treadmill exercises, the ALJ failed to account for the evidence in the record that Heun's severe pain was remedied by increased doses of pain

medication.  (A.R. 20, 490.)  The increase in the dosage of her pain medication, in turn, allowed Heun to be more active.  (A.R. 490.)  In fact, Heun indicated to Dr. Rubenstein that a 300 mg dose of Topamax relieved her pain and allowed her to increase her activities.  (A.R. 490.)  But when Heun requested that Dr. Rubenstein lower the dosage, Dr. Rubenstein noted that Heun appeared depressed and inactive, and so recommended she return to the 300-400 mg per dose level.  (A.R. 493.)

Further, as instructed by the *Reddick* court, the ALJ should not penalize Heun for attempting to lead a normal live in spite of her limitations, especially when Heun's activities are a substantial part of her treatment.  Heun's progress notes indicate, under a section titled "patient instructions," that she should sleep regularly, wake after seven to nine hours of sleep, and "stay up and out of bed," walk for an increasing period of time, and engage in yoga-like relaxation exercises.  (A.R. 418.)  Dr. Rubenstein notes that "hot yoga" is a method of alleviating pain.  (A.R. 426.)  She told Heun to exercise as part of her treatment, and even told Heun's husband that "she needs to be up and dressed and active or this therapy is not working."  (A.R. 420, 487.)  Heun need not vegetate in a dark room to prove her disability.  Like the claimant in *Reddick*, Heun's activities are consistent with her disability, and do not undermine the credibility of her testimony.  Like the ALJ reversed in *Reddick*, ALJ Kwon failed to examine the complete record, and therefore, her discrediting of Heun's testimony is unsupported by substantial evidence.

In his cross-motion for summary judgment, the Commissioner argues that medical evidence does not support Heun's testimony of disabling pain.  Commissioner's Cross-Motion for Summary Judgment, Dkt. No. 15 at 7-8.  The Commissioner misplaces the burden of persuasion.  Heun has established she has a medically determinable impairment; at step two, the ALJ found that Heun has a "severe" medically determinable impairment, namely, the lasting effects of her corneal transplant, "with post-herpetic neuralgia and photophobia."  (A.R. 18.).  Therefore, the "ALJ may not reject [Heun's] subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  *See Burch*, 400 F.3d at 680.  Rather, the ALJ must present clear and

convincing reasons, supported by substantial evidence, why Heun's testimony is not credible. Although the ALJ has presented a clear reason—the inconsistency between Heun's claimed pain level and her the activities she engages in—that reason is unconvincing because it is not supported by substantial evidence. When the whole record is reviewed, substantial evidence shows that Heun's pain testimony is consistent with the record. The Court therefore finds Heun's testimony regarding the intensity of her pain credible. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2008) (acknowledging a split within the Circuit as to whether the credit-as-true rule is discretionary or mandatory, but recognizing that the court has "flexibility" to apply the standard, even where application of the rule would not result in payment of benefits). Accordingly, Heun's testimony serves as substantial evidence supporting a residual functional capacity finding that includes a pain limitation.

**B.    The ALJ Improperly Focused on Select Portions of the Medical Opinions That Suggest Non-disability.**

The ALJ must determine the residual functional capacity for work activity "on a regular and continuing basis." 20 C.F.R. § 404.1545(b). To do this, the ALJ is free to rely on whatever evidence he chooses, even though reliance on other evidence would have caused him to reach the opposite conclusion. *Fair*, 885 F.2d at 604. Selective reliance, however, must be consistent with the medical record as a whole. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (holding that an ALJ cannot reject a portion of a medical report that is clearly reliable). The ALJ cannot selectively focus on aspects of the medical report which suggest non-disability without providing clear, convincing, specific, and legitimate reasons for rejecting the portions of the medical opinions not focused on. *Id.* at 1159. Failing to provide a clear and convincing reason is reversible error. *Id.* at 1160.

In *Widmark v. Barnhart*, the Ninth Circuit held that an ALJ's selective focusing undermined his determination of the claimant's residual functional capacity to do fine manipulation without limitation. 454 F.3d 1063, 1067 (9th Cir. 2006). The court noted that

the ALJ only cited to one portion of the medical report, where the examining doctor stated that claimant was not restricted as to grasping and manipulation with his hands. *Id.* The ALJ, however, ignored many other portions of the same report where the examining doctor opined that the claimant had flaccid paralysis, tendon laceration, dysfunction of his right thumb, and the inability to bend his thumb. *Id.* The court, after considering the entirety of the report, found that the ALJ's findings were not supported by substantial evidence. *Id.*

Here, the ALJ did not find any of the medical opinions contradicted or inconsistent with the record. Therefore, the opinions of Drs. Barth, Rubenstein, Peterson, and Lightfoot can only be rejected by clear and convincing reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. The ALJ focused on the portions of these medical opinions that favored non-disability and failed to give clear and convincing reasons for discounting the medical evidence that supports a residual functional capacity finding that accommodates the effects of Heun's pain.

**1.    Dr. Barth**

The ALJ found that the opinion of treating physician Dr. Barth supported the finding that pain limitations should not be included in the residual functional capacity. (A.R. 20.) The ALJ relied on Dr. Barth's report to support her findings that Heun could walk up and down stairs without difficulty, work with both small and large objects in sedentary work, could frequently lift fifty pounds, and frequently stoop, crouch, and squat. (A.R. 20.) The ALJ focused selectively on this evidence to support her determination of non-disability.

Dr. Barth also opined, however, that Heun's "biggest visual problem was the pain and intense photophobia that prevented her from working in an office," that Heun would "need unscheduled breaks in an 8-hour working day," that "visual demands and light caused worsening of her neuropathic pain," and that "her symptoms would frequently interfere with her attention and concentration." (A.R. 20, 580.) Dr. Barth also stated that Heun "has nearly constant pain in her right eye," and that "[n]one of the treatments have allowed her to function normally in an office setting or outdoors." (A.R. 322.)

//

The ALJ failed to provide clear and convincing reasons why these portions of Dr. Barth's opinion, which substantially support that Heun's residual functional capacity should include a pain limitation, would be discounted. The ALJ's reasons for discounting Dr. Barth's opinion is that he "failed to indicate how often or how long [the unscheduled breaks] would be" and did not check all the boxes on the form. (A.R. 20.) The ALJ did not even address Dr. Barth's opinion that visual demands worsen Heun's pain or that the pain would frequently interfere with her ability to work. (A.R. 20, 580.) Without providing clear and convincing reasons to discount Dr. Barth's opinion regarding the pain and its effects on Heun's residual functional capacity, the ALJ may not selectively focus on other parts of his opinion.

### 2.    Dr. Rubenstein

The ALJ selectively cited to Dr. Rubenstein's five page chronic pain residual functional capacity questionnaire and found that the opinion of treating physician Dr. Rubenstein supported her residual functional capacity finding. (A.R. 20.) The ALJ relied on Dr. Rubenstein's opinion that Heun's "symptoms would interfere with attention and concentration occasionally," that Heun had "no physical restrictions," and that Dr. Rubenstein felt Heun "was capable of low stress work." (A.R. 20.) The ALJ failed even to acknowledge that Dr. Rubenstein also opined that Heun has "'good days' and 'bad days,'" and would need "unscheduled breaks during a working day." (A.R. 575, 576.) And, the ALJ did not discuss the evidence in the record, specifically Dr. Rubenstein's progress notes, which indicate the severity of Heun's eye pain and its limiting effects on her ability to function. (A.R. 129, 475, 503.) The ALJ did not provide clear and convincing reasons why these portions of Dr. Rubenstein's opinion could be rejected. The ALJ's focus on evidence that leans towards non-disability without clear and convincing reasons is reversible error.

### 3.    Dr. Peterson

The ALJ cited to examining physician Dr. Peterson to support her finding that Heun would have the unlimited ability to engage in physical activity. The ALJ acknowledged that Dr. Peterson did opine that Heun's capacity would be limited by her "vision and

possible falls or other secondary injuries." (A.R. 21.) The ALJ selectively paraphrased this opinion, as Dr. Peterson made that statement in reference to Heun's "inability to see." (A.R. 329.) Dr. Peterson's opinion is that Heun is unable to continue any sedentary or computer activity that requires visual acuity. (A.R. 329.) Dr. Peterson diagnosed Heun with "opacity in her right eye" and assessed her uncorrected vision in that eye at 20/400. (A.R. 329.) Because Dr. Peterson does not discuss the severity of pain in Heun's eye at all, his opinion does not support the ALJ's exclusion of a pain limitation from Heun's residual functional capacity, particularly in light of the evidence in the record of the limiting effects of Heun's pain.

### 4. Dr. Lightfoot

The ALJ cited examining physician Dr. Lightfoot's report for his opinion regarding Heun's best possible vision after correction. He opined that Heun had a right eye corneal transplant, that the graft was clear, that her left eye was normal, and that her prognosis was "good." (A.R. 328.) The Commissioner argues that Dr. Lightfoot's report supports the ALJ's residual functional capacity assessment because it shows that Heun's "visual acuity problem could be largely fixed with glasses." Dkt. No. 15 at 4. Dr. Lightfoot opined that Heun's best possible correction of her visual acuity for distance is 20/40 in her right eye, and 20/20 in her left. (A.R. 328.) Dr. Lightfoot's report, however, does not discuss the pain associated with Heun's condition. Although glasses may improve Heun's vision, and she already wears dark glasses to help with her photophobia, glasses will not address the pain that requires her to take breaks during the day. Dr. Lightfoot's report does not substantially support a finding that the residual functional capacity should not include a pain limitation.

### 5. Dr. Sheehy

The ALJ cited to Dr. Sheehy, a non-treating, non-examining physician, who opined in a form report that Heun possessed "no restrictions physically but that [Heun] had limitations to near and far visual acuity and depth perception and would need to avoid working at heights or with machinery." (A.R. 21.) The ALJ did not mention other portions of

Case No. 12-cv-02227 NC
ORDER GRANTING REMAND          14

Sheehy's opinion that "the severity of [Heun's pain symptom] and its alleged effect on function is consistent, in [his] judgment, with the total medical and non-medical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alterations of usual behavior or habits." (A.R. 339.) The ALJ committed error by focusing on the portion of Dr. Sheehy's opinion that suggested non-disability and failing to mention portions of his opinion that suggested disability. As a whole, Dr. Sheehy's opinions support a residual functional capacity finding that includes a pain limitation.

In weighing the medical opinions, the ALJ selectively focused on evidence that suggests non-disability, and discounted evidence in support of disability, without a clear and convincing reason. This is reversible error. Ultimately, the record, when considered as a whole, does not support her residual functional capacity finding. The ALJ's residual functional capacity determination did not include a pain limitation, in stark contrast to the evidence in the record that indicates that Heun's pain is a major factor in her ability to function.

The ALJ determined that Heun could perform work which required "occasional visual acuity (either near or far)." (A.R. 19.) The ALJ elaborated on this and stated, "with respect to vision, the claimant can see in general at all times, however work that requires extra intense visual acuity, either near or far, must be restricted to only an occasional basis as defined by the DOT and the companion authorities." (A.R. 19.) Occasional "means occurring from very little up to one-third of the time." SSR 83-10. Although the evidence in the record could be interpreted as supporting a finding that Heun is not capable of any visual acuity, it could also support the finding that Heun is capable of occasional visual acuity. Therefore, the Court upholds the ALJ's decision as to Heun's capacity for acuity. The Court finds the ALJ's determination that Heun has the residual functional capacity to work without any accommodation for the effects of her pain, however, unsupported by the medical evidence and testimony in the record.

//

## C. Harmless Error

A decision of the ALJ will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679. To determine whether an error is harmless, this Court looks to whether the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ found that Heun was not disabled because her residual functional capacity allowed her to perform certain jobs that required only occasional acuity. (A.R. 22.) But, as discussed in depth above, the ALJ's residual functional capacity finding is not supported by substantial evidence because she did not account for the limiting effects of Heun's intense neurological pain in determining her residual functional capacity. Johnson considered an unsupported residual functional capacity finding when he responded to the ALJ's interrogatory and stated that there were jobs in the national economy which Heun could perform. Johnson never considered a residual functional capacity that included a pain limitation, but the ALJ relied on his opinion in finding Heun not disabled. A finding of non-disability because of an inaccurate residual functional capacity is harmful error. *See Widmark*, 454 F.3d at 1069 n.4.

## D. Remand

District courts have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The district court should credit evidence that was rejected during the administrative process if the ALJ failed to provide legally sufficient reasons for rejecting the evidence. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The necessity for further proceedings is evaluated under the general rule that remand is appropriate if enhancement of the record would be useful. *Id*.

Here, the Court has found that the ALJ improperly discredited Heun's pain testimony and selectively focused on portions of medical opinions that supported a residual functional capacity finding of occasional visual acuity without considering the limiting effects of

Heun's pain. Crediting Heun's testimony and considering all of the medical evidence, the record substantially supports a residual functional capacity finding that includes a pain limitation. Given that Johnson never considered a residual functional capacity which included a pain limitation, the Court remands for the Commissioner to determine whether jobs exist in the national economy for a residual functional capacity finding that includes a pain limitation.

## IV. CONCLUSION

This Court reverses the decision of the ALJ and remands for the Commissioner to include a pain limitation in his assessment of Heun's residual functional capacity. Considering the limiting effects of Heun's pain on her residual functional capacity, the Commissioner must reevaluate whether she may perform jobs existing in significant numbers in the national economy.

IT IS SO ORDERED.

Date: March 5, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge